## Case No. 17,208. ·

### The WARRINGTON.

[Blatchf. & H. 335.] 1

District Court, S. D. New York. Oct. 19, 1832.

WAGES OF SEAMEN—RECOVERY—ACTION IN REM—TIME OF SUIT.

1. Where no wages are stipulated in shipping articles, a seaman may either prove, by parol evidence. what wages were agreed to be given, or may. under the statute (Act July 20, 1790, § 1; 1 Stat. 131). claim the highest rate payable at the port of shipment within the three months next preceding the date of the articles.

2. Although, in an action in rem for wages, a warrant is issued under a certificate of sufficient cause of complaint for admiralty process, conformably to the statute (Act July 20, 1790, § 6; 1 Stat. 133), yet the owner of the vessel may intervene by answer. and bar the action by proving that the libellant had no right to sue.

3. A seaman who hires for a trading voyage for a specified time. cannot sue for wages until the expiration of the time. unless there be proof of his actual or constructive release.

In admiralty. This was an action in rem, for wages. The libel set forth the voyage agreed upon, and averred that it had been performed, and charged that no shipping ar- ·

---

1 [Reprinted from 10 N. B. R. 239, by permission.]

1 [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

ticles for the voyage were signed by the libellant, and that the master agreed to pay him wages at the rate of $12 per month. The answer averred that shipping articles were regularly signed by the libellant, and that no wages were stipulated, because the libellant agreed to serve without any; and that, if he was entitled to wages, he had no right of action, inasmuch as the term of service stipulated in the articles yet remained unexpired. On the trial, shipping articles, signed by the libellant, were produced and proved. They contained no statement of any rate of wages agreed upon. The libellant offered parol evidence to prove what rate of wages the master agreed to pay, which evidence was objected to by the claimant.

Edwin Burr and Erastus C. Benedict, for libellant.

Thomas C. Pinckney, for claimant.

BETTS, District Judge. I perceive no objection to the competency of parol evidence to prove an agreement with the libellant as to the amount of wages to be paid. The seaman stands, in this particular, as if no articles had been entered into: and, in such case, the contract on both sides is a subject of parol proof. The Porcupine, 1 Hagg. Adm. 378; The Harvey, 2 Hagg. Adm. 79. The parol evidence does not contradict the articles. They are conclusive upon the libellant no further than his express engagements go, and no implication to his prejudice can be raised from an omission which is the fault of the master and not of the mariner. Nor is the right of the libellant limited to the highest rate of wages payable at this port within the three months next preceding the date of his contract. I apprehend that, under the fair implication of the statute (Act July 20, 1790, § 1; 1 Stat. 131), the master would be inhibited from giving evidence of any agreement by the mariner to accept less than such rate of wages, although a judge of high learning and experience has intimated a contrary opinion (Jameson v. The Regulus [Case No. 7,198], note); but, manifestly, the restriction ought not to apply to seamen. It would often operate as a bounty to masters to disregard the injunctions of the statute, as well as a serious prejudice to mariners. The fluctuations in trade and navigation often work rapid changes in the rates of compensation to sailors. It is not unusual to find prices suddenly advance twenty-five or thirty per cent., with a brisk market and active freights; and seamen's wages, which have remained for months at from eight to twelve dollars, are known to rise at once to fifteen and twenty dollars per month for the same services. This profit should not be gained by the master and lost to the mariner, and the law will discountenance any rule applicable to the subject, which shall tend to favor the former at the expense of the latter. Assuming the contract to have been made within the United States,

it was the duty of the master, specifically prescribed by the 1st section of the act of July 20th, 1790 (1 Stat. 131), to have made an agreement, in writing or print, with any seaman taken on board his ship, and he incurred a penalty by omitting to do so. This written contract is held conclusive against the seaman, as well in regard to wages as to the voyage and the term of service (The Isabella, 2 C. Rob. Adm. 241; White v. Wilson, 2 Bos. & P. 116; Bartlett v. Wyman, 14 Johns. 260; Johnson v. Dalton, 1 Cow. 543): although it is remarkable that the American statute does not require, as the English acts do, that the rate of wages shall be inserted in the articles. It would be against the plainest principles to suffer the mariner to be deprived of his rights or privileges through the misconduct or omission of the master in framing and taking the shipping contract. The statute speaks only of the master as the party acting primarily in the preparation of the written agreement. The words are, "every master, &c., shall, before he proceed on such voyage, make an agreement, in writing or in print, with every seaman or mariner on board, &c., declaring the voyage or voyages, term or terms of time for which such seaman or mariner shall be shipped; and, if any master, &c., shall carry out any seaman or mariner, &c., without such contract or agreement being first made and signed by the seaman or mariner, such master, &c., shall pay to every such seaman or mariner the highest price or wages which shall have been given at the port or place where such seaman or mariner shall have been shipped, for a similar voyage, within three months next before the time of such shipping, * * * and shall, moreover, forfeit twenty dollars for every such seaman or mariner." 1 Stat. 131. It is plainly intended by the statute, that the crew are to act secondarily, and by the procurement of the master, in entering into the contract. No express obligation is laid on the seamen to execute the articles. They only lose their voyage if they refuse to sign the articles; and, in my opinion, the master cannot, by taking the mariners to sea without a written agreement, avail himself of his own misfeasance, either to limit their compensation to any prior rate of wages, or to prevent them from proving the actual agreement by parol, when he has deprived them of the higher evidence of the shipping articles. They are not obliged to accept less than the highest rate at the port of shipment during the preceding three months; but it seems to me, that it cannot be justly implied from the statute, that they are prohibited from recovering the actual value of their services at the time, or the sum agreed by the master, however that may exceed the accustomed pay antecedent to the time of the contract. Judge Peters held, that a mariner might recover the value of privileges granted him supplementary to the shipping articles, and not written in them, the act of congress not requiring their insertion.

Parker v. The Calliope [Case No. 10,729]. However this decision may be regarded as admitting, in effect, parol proof, to vary and enlarge the compensation fixed by the articles, it is a manifest recognition of the doctrine that, in the absence, in the written agreement, of all stipulations on that head the mariner is entitled to claim pay on the footing of a verbal contract with him.

This topic has been considered more in detail in this case, because, although. under the decree which will be rendered, the libellant can derive no advantage .from ·the principle declared, yet, that principle has a material application to a point urged by the libellant against that branch of the defence which objects to the action as prematurely brought, and insists that it must, for that reason, be dismissed. To meet the objection that the agreed term of service is unexpired, it is urged, by the libellant, that the misconduct or laches of the master, in neglecting to have shipping articles signed by the seamen, with a distinct agreement for wages, renders the articles inoperative as to the stipulations for the voyage and the time of service.

The articles were entered into by the libellant on the 28th of January, 1832, for the term of ten months. The voyage was a circuitous one to Central America, the West Indies, and back to any port on the North Atlantic. The libellant entered on board at the same time, and served until the arrival of the vessel in this port, on the 27th of March last, leaving eight months of the term yet unserved. No proof is given that the voyage ended at this port. The libellant left the vessel immediately on her arrival in port, and the other men were paid off a few days subsequently; but there is no evidence that the libellant was discharged by the master. He was sick and useless on the voyage, and stated to one of the crew, that he left the ship to go to the hospital. If the case were one of meritorious services, I should be disposed to imply the consent of the master to the libellant's discharge, especially if there was any appearance of bad faith or overreaching in the conduct of the master in insisting upon the terms of the contract, particularly as it does not appear that the vessel was to proceed further, or that any duty remained for the libellant to perform on board. As the case stands, however, the libellant must be limited to the rights given him by the contract; and, under that, he establishes no title to maintain the present action. The argument, that the written agreement is void because a rate of wages is not stated in it, cannot be maintained. The libellant was competent to contract for a voyage and a term of service. The engagement of ten months was to his advantage; and, on the facts in evidence, he would be entitled to claim payment of wages for that term, had he demanded them and offered to fulfil the engagement on his part. He took to himself, however, the right to abandon the vessel, directly on her ar-

rival in port, and commenced this suit to recover wages. The period of his hiring yet remaining unexpired, he establishes no present right of action.

As to the point taken by the libellant, that this action was instituted by summons, upon the hearing of which process was awarded against the vessel, pursuant to the statute (Act July 20, 1790, § 6; 1 Stat. 133), and that the defence now set up was not raised before the judge on that proceeding, this court has heretofore held, that matter in bar of the action may be set up in the answer, and be urged at the final hearing. although it was not presented on the preliminary hearing before the magistrate, on the summons. That hearing is not designed to preclude the owner from interposing a substantial defence on the merits, whether that defence is set up on such hearing or not. The silence of the claimant as to any such defence, is no implied waiver of it. nor is the decision of the magistrate, as to the sufficiency of the cause shown, regarded as conclusive. The libel must be dismissed, with costs. Decree accordingly.